UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JEROME HARRIS,
   Plaintiff,

vs.                              No. 09-1037

JOSEPH SCHAPMIRE, et. al,
   Defendants

## SUMMARY JUDGEMENT ORDER

This cause is before the court for consideration of the defendants' motion for summary judgement. [d/e 43]

### I. BACKGROUND

The plaintiff, a state prisoner, filed his complaint pursuant to 42 U.S.C. §1983 against five defendants from the McLean County Jail including Sergeants Joseph Schapmire, Timothy Boyd and Jennifer Reuter; Melinda Fellner and Kenneth Pacha.

The plaintiff has the following surviving claims:

1) Defendants Schapmire, Boyd, Reuter and Fellner violated his constitutional rights when they failed to protect the plaintiff from an inmate attack in November of 2008;
2) Defendants Schapmire and Pacha violated the plaintiff's constitutional rights when they used excessive force on November 6, 2008;
3) Defendant Reuter violated the plaintiff's constitutional rights when she failed to protect the plaintiff on November 6, 2008.  July 8, 2009, Case Management Order, #2.; *see also* March 11, 1009 Merit Review Order; May 5, 2009 Case Management Order.

### II. FACTS.

The plaintiff did not respond to the defendants statement of undisputed facts:

Defendant Melinda Fellner says she is the Inmate Assessment Specialist at the McLean County Jail and is responsible for interviewing, accessing and classifying inmates at the jail. (Def. Memo, Ex.1, Fel. Aff., p. 1).  Fellner says she has access to documents relating to inmate concerns and safety issues.   Fellner says she has reviewed these documents and there never was a "no contact" order between the plaintiff and Bradley Shipp. (Def. Memo, Ex.1, Fel. Aff., p. 2).

1

Fellner says while there were some personal issues between Jerome Harris and Bradley Shipp prior to November 6, 2008, she had no knowledge of a substantial risk of harm to either of them. (Def. Memo, Ex.1, Fel. Aff., p. 2) The defendants have provided copies of the following inmate request forms from both inmates prior to the November 6, 2008 incident:

NOVEMBER 4, 2008: INMATE REQUEST FORM (plaintiff)
The plaintiff says he promises to stay out of trouble from now on, but he does not get along with Bradley Shipp. The plaintiff is apparently asking that Shipp be moved because he doesn't want to have a fight. The response tells the plaintiff "you'll need to get along." (Def. Memo, Ex. 5)

NOVEMBER 5, 2008: INMATE REQUEST FORM (Shipp)
This form is from Inmate Shipp and he tells "Melinda" that he is not safe. He says the plaintiff has threatened to punch him. He warns that he may get into a fight due to the plaintiff's anger. The response tells Inmate Shipp that he is response for his own actions and if he is involved in a disturbance, he could receive discipline.

NOVEMBER 5, 2008: INMATE REQUEST FORM (Shipp)
Another form from Inmate Shipp asking to be moved that day. He says he and the plaintiff do not get along. The inmate says he believes his life is in danger. The response indicates someone spoke to Inmate Shipp in person and he agreed to stay in the cell until the next day when space became available.

NOVEMBER 5, 2008: INMATE REQUEST FORM (plaintiff)
This form is from the plaintiff. He says he "will make sure I get along" and will ignore Inmate Shipp.

NOVEMBER 6, 2008:INMATE REQUEST FORM (Shipp)
Inmate Shipp says he and the plaintiff have agreed to get along. "So please, I don't need to me moved + I apologize for giving you a hard time yesterday." (Def. Memo, Ex. 9).

Joseph Schapmire says he is a correctional officer at the McLean County Jail. On November 6, 2008, the plaintiff was assigned to the E-Block. On this date, Schapmire says he heard banging from E-Block and went to investigate. When he opened the door, he saw inmate Bradley Shipp bleeding from the nose, with blood over his face. The officer says Shipp was screaming that the plaintiff had just attacked him. (Def. Memo, Ex.2, Shap.. Aff., p. 1).

Inmate Shipp claimed that the plaintiff had jammed his gate door open with a book, and then attacked him. Officer Schapmire says he observed the plaintiff in his cell "wiping his bare torso with a towel." (Def. Memo, Ex.2, Shap.. Aff., p. 2). The officer says when he attempted to close Harris' gate door, the plaintiff held it back with his arm. The plaintiff then removed his arm and the officer was able to close it. (Def. Memo, Ex.2, Shap.. Aff., p. 1).
Schapmire says he called for assistance and several officers responded. Inmate Shipp was taken to the medical unit and later to an outside hospital. (Def. Memo, Ex. 4, Pasha Aff, p. 2)

Sergeant Pacha, Sergeant Maaks, Officer Hithches, Officer Hughes and Sergeant Frank responded to the call for additional help. Sergeant Pacha says both inmates were yelling at each other and Shipp accused the plaintiff of putting a book in the gate of his cell in order to have access to Inmate Shipp. The sergeant says he observed the plaintiff washing blood off of his clothes. The plaintiff denied fighting with Shipp. (Def. Memo, Ex. 4, Pasha Aff, p. 2)   Sergeant Pacha says he asked other inmates what had happened, but they denied seeing anything. The plaintiff said he wanted to see a nurse and he was taken to the medical unit.

The plaintiff received a disciplinary ticket as a result of the altercation and was found guilt of Assault or Battery; Causing a Disturbance; and Obstructing or Jamming a Cell Door. He was placed in 14 days disciplinary segregation and his recreation time was limited.

Officer Schapmire says he and Officer Reuter escorted the plaintiff to an isolation cell. The plaintiff's hands were handcuffed behind him. When the plaintiff arrived at the cell, the officer claims the plaintiff said he was going to kill himself and began to bang his head against the wall. Schapmire says he ordered the plaintiff to stop, but he refused. (Def. Memo, Ex.2, Shap.. Aff., p. 2).(Def.Memo, Ex. #,   The officer says for the plaintiff's safety, he "placed him on his buttocks in the middle of the hallway." (Def. Memo, Ex.2, Shap.. Aff., p. 2).

Officer Schapmire says Sergeant Pacha was called. Officer Schapmire says the plaintiff refused to comply with two orders to get to his feet. Therefore, Officer Schapmire and Sergeant Pacha carried the plaintiff to C-Block. (Def. Memo, Ex.2, Shap.. Aff., p. 1) Schapmire says the when he reached the cell block, the plaintiff agreed to walk. When they arrived at the cell, the plaintiff was placed in a restraint chair by Schapmire, Pacha and Reuter. (Def. Memo, Ex.2, Shap.. Aff., p. 3).

Officer Reuter also says the plaintiff had threatened to kill himself in his cell. When he was placed in the restraint chair, a nurse was called. The plaintiff told the nurse he was going to hang himself and a crisis team was called. (Def. Memo, Ex. # 3, Reut. Aff, p. 2).

Officers Schapmire and Reuter say before November 6, 2008, they were not aware of any threats or attacks between the plaintiff and Inmate Shipp. The officers says they had never received any verbal or written request from the plaintiff asking to be moved because of Shipp. In addition, they were not aware of a no-contact order between the two men. (Def. Memo, Ex.2, Shap.. Aff., p. 3).(Def. Memo, Ex. # 3, Reut. Aff, p. 2).

### III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue

of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.  *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000).  A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial."  *See* Fed. R. Civ. P. 56(e).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Ind. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]."  Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence."  Fed. R. Civ. P. 56(e) (emphasis added).  Personal knowledge may include inferences and opinions drawn from those facts.  *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).  "But the inferences and opinions must be grounded in observation or other first-hand personal experience.  They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience."  *Visser*, 924 F.2d at 659.

## IV. ANALYSIS

A. FAILURE TO PROTECT

The defendants say the plaintiff cannot demonstrate that they failed to protect him from an inmate assault in violation of his constitutional rights.  There is no doubt that jail officials have a duty to protect detainees from violence at the hand of other inmates.... But liability of a jail officer for failure to protect an inmate only materializes if the officer knew the inmate faced a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it."  *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir.2008) (*internal citations and quotations omitted*). To prove such deliberate indifference, the plaintiff must show that the defendants were subjectively aware of the risk to him, yet failed to take reasonable measures to prevent it. See *Farmer v. Brennan*, 511 U.S. 825, 844, 114 S.Ct. 1970, 128 L.Ed.2d 811; *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir.2006). "A prisoner normally proves actual knowledge of impending harm by showing that he complained to officials about a specific threat to his safety." *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir.1991). "Knowledge of a risk can be shown if an official was exposed to information from which the inference could be drawn that a substantial risk exists, and he or she also draws the inference." *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir.2004); *see also Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir.2002).  The defendants argue that the plaintiff has failed to provide any evidence that they had reason to know he faced a substantial risk of harm.

In his complaint, the plaintiff claims there was a no contact order in place between himself and Inmate Shipp. There is no evidence of this claim and the plaintiff apparently has abandoned this allegation in response to the dispositive motion.

In addition, the plaintiff has presented no evidence that he told the plaintiffs that he was in danger beyond his Inmate Request Form on November 4, 2008. In this form, the plaintiff only says he does not get along with Inmate Shipp and he wants the jail to move Shipp so he doesn't get into a fight. The plaintiff does not say that Shipp has threatened him. In addition, the plaintiff sent another Inmate Request Form on November 5, 2008, saying he would get along with Inmate Shipp and ignore him.

In response to the summary judgement motion, the plaintiff now argues that the defendants knew he was in danger because of the Inmate Request Forms that were sent by Inmate Shipp. Specifically, the form in which Inmate Shipp makes reference to the plaintiff's anger and that the plaintiff had said he wanted to punch Shipp.

First, the plaintiff cannot base a failure to protect claim on situation that he instigated. *See Clark v Johnson,* 2006 WL 1582181 (7th Cir. Wisc. 2006). Second, any warning that Defendant Shipp may have provided defendants was addressed. An officer spoke with Defendant Shipp and he agreed to stay until he could be moved the next day. In addition, Inmate Shipp sent another Inmate Request Form the next day stating that he did not need to be moved since he and the plaintiff had agreed to get along.

The plaintiff also argues that the incident would not have happened if Officer Boyd had properly close his cell door which would have prevented any contact between the two inmates. The defendants claim that the evidence shows it was the plaintiff who jammed his own cell door in order to attack Inmate Shipp. However, this factual dispute is of no consequence, since the plaintiff has failed to show that any defendant had reason to know that Inmate Shipp posed a threat to the plaintiff.

B. EXCESSIVE FORCE

Defendants Schapmire and Pacha also argue that the plaintiff cannot demonstrate that they used excessive force on November 6, 2008, or that Defendant Reuter failed to protect him from the use of excessive force. Because petitioner was a pretrial detainee at the time of the incident, his claim arises under the Fourteenth Amendment's due process guarantee, rather than the Eighth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989). Although the precise standard for evaluating the force used against a pre-trial detainee is somewhat murky, the protections for pre-trial detainees under the Due Process Clause are at least as great as the Eighth Amendment protections available to a convicted prisoner. *Haywood v. Marathon County Sheriff Dept*., 2007 WL 5633391 (W.D.Wis. August 3, 2007)*(citations omitted)*.

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of

the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991).

Because jail officials must sometimes use force to maintain order, the central inquiry in an excessive force claim is whether the force "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). To determine whether force was used appropriately, a court must consider any safety threat perceived by the officers, the need for the application of force, the relationship between that need and the amount of force used, the extent of the injury inflicted and the efforts made by the officers to mitigate the severity of the force. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

The defendants say they only took the necessary steps to protect the plaintiff from hurting himself since he was pounding his head against a wall and claiming that he was going to kill himself. He was pushed to the ground, carried down a hallway, and placed in a restraint chair. The defendants point out that the plaintiff was not injured by any contact he had with the defendants.

In his original complaint, the plaintiff alleged that Officer Schapmire pushed him to the floor for no reason. However, in response to the motion for summary judgement, the plaintiff tells a new version of the events. The plaintiff admits Officer Schapmire was acting in response to his efforts to harm himself.

The plaintiff says a nurse had told him that Inmate Shipp had HIV and she said he would be allowed to take a shower to wash the blood off. The plaintiff says he was escorted to a cell by Officer Schapmire and he asked to take a shower. Instead, he claims Officer Schapmire left him in a cell with his handcuffs and he could not shower or use an ice pack provided by the nurse.[1] The plaintiff says about an hour later, Officer Reuter and Schapmire came to escort him to another cell. He said he refused until he was allowed a shower. The officers responded that the plaintiff was going to isolation. The plaintiff admits he claimed he would kill himself if the officers took him to insolation and admits that he began to bang his head against a wall. The plaintiff alleges that Officer Schapmire then pushed him to the ground, but it did not stop his attempts to bang his head on the wall. The plaintiff says Officer Pacha came around the corner and started dragging him down the hallway. The plaintiff maintains the officers should have put him on suicide watch.

The plaintiff's revised version of events clearly does not state a claim of excessive force. Whether or nor Officer Shapmire was successful in his efforts, he pushed the plaintiff down to prevent him from hitting his head against the wall. Furthermore, the plaintiff had just been involved in a fight with another inmate which sent the other inmate to the hospital and refused to

---

[1] The plaintiff claims the officer's actions constitute cruel and unusual punishment, but this is not a claim previously made by the plaintiff and is not before this court.

6

go to isolation. "Dragging" the plaintiff down the hall does not rise to the level of excessive force. There is no evidence either officer used force "maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 6-7. There is no evidence the officers injured the plaintiff. Instead, the evidence shows the officers were making a good faith effort to protect the plaintiff and restore discipline to the prison.

Since the court finds there is no evidence of excessive force, there is also no claim that Defendant Reuter failed to protect the plaintiff from the use of excessive force.

**ITS IS THEREFORE ORDERED that:**

**1) The defendant's motion for summary judgement is granted pursuant to Fed. R. Civ. P. 56. [d/e 43]   The clerk of the court is directed to enter judgment in favor of the defendant in accordance with this order.  The parties are to bear their own costs.  This case is terminated.**

**2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**3) The agency having custody of the plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $350.00.**

**4) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such a change.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.**

**5) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this 7th day of July, 2010.

\s\Harold A. Baker

_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE